## The Commonwealth *versus* Henry.

It was alleged in an *indictment* that the defendant, with intent to defraud the prosecutor, falsely asserted to him, and also to another person who communicated it to him, that he had a warrant, issued by competent authority, commanding the arrest of the daughter of the prosecutor, for an offence punishable by fine and imprisonment, and that he threatened to arrest her; by means of which representations he obtained from the prosecutor effects and money of the value of $100: It was *Held*, that this was such an obtaining of money under false pretences as was indictable under the 21st section of the Act of 12th July, 1842.

ERROR to the Court of Quarter Sessions of *Crawford county.*

A bill of indictment was found against Michael Henry, for obtaining money under false pretences.    On the part of the defendant a rule was obtained to show cause why the indictment should not be quashed on the ground that the facts alleged in it, if true, did not constitute the offence charged.    On March 28, 1853, the indictment was quashed, and this was assigned for error.

In the indictment it was charged that Michael Henry, on the 6th of November, 1852, unlawfully, designedly, and intending to cheat and defraud James B. Smith of his goods, &c., falsely pretended and asserted to him that he had in his possession a warrant, issued by competent authority in the county, authorizing and commanding him to arrest Esther Ann Mapes, the daughter of the said James B. Smith, for an alleged offence or crime against the Commonwealth, punishable by fine and imprisonment—that he threatened to arrest her, &c.; which said representations, it was alleged, were falsely and designedly made by the said Henry, with intent to cheat and defraud the said James B. Smith of his moneys, &c.; by means of which said false representations and pretences, the said Henry obtained from Smith moneys and property of the value of $100, in order to protect the said Esther from exposure, prosecution, conviction, &c., for the alleged offence, with intent to cheat and defraud the said Smith, when in truth and fact the said

Y

[Commonwealth *v.* Henry.]

Henry had not then in his possession or control any such warrant, &c.

In a second count it was alleged that the false allegation was made to one Alanson Canfield, and by him communicated to Smith, in consequence of which Smith requested Canfield to settle and suppress the proceeding; by means of which false representations and pretences Henry obtained from Smith money and property to the amount of $100, in order to protect his daughter from exposure, &c.

In a *third* count it was alleged that Henry, intending to extort money from said Smith, proposed to compromise and suppress a warrant and complaint as before represented, if Smith would pay to him $100 as a consideration for compromising and suppressing the complaint, and alleging that Smith paid the money.

In the 21st section of the Act of 12th July, 1842, it is declared that, "Every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, *or by any false pretence whatsoever*, obtain from any person any money, personal property, or other valuable things, upon conviction thereof shall be imprisoned in the penitentiary or in the county jail, at the discretion of the Court before whom he shall be tried, not exceeding one year, or by fine not exceeding three times the value of the money, or property, or other thing so obtained, or by both such fine and imprisonment."

*Richmond*, with whom was *Thompson*, for the Commonwealth.— In support of the indictment reference was made to the case of the Commonwealth *v.* Burdick, 2 *Barr* 163; Commonwealth *v.* Thompson, 3 *Penna. Law Journal* 250; *Lewis U. S. Crim. Law* 197. It was said that it seemed that under the Act of 1842, it was necessary only that the *pretence be false* and successfully used with intent to *cheat or defraud*: 3 *Pa. L. J.* 250. In the present case it was not pretended that the defendant had a warrant as he alleged. It was stated that Henry was *not* an officer.

In the New York Act the provision is that, "if any person shall knowingly and designedly, by false pretence or pretences, obtain from any other person or persons any moneys, goods, or merchandise, *or other effects whatsoever*, with intent to cheat or defraud such person or persons, he shall be deemed guilty of an offence." In the case of The People *v.* Haines, 11 *Wend.* 557, it was held, that it is sufficient if the false pretence had so material an effect that, without its influence on the mind of the prosecutor, the property would not have been delivered: *Lewis Crim. Law* 574.

*Finney*, for the defendant.

[Commonwealth v. Henry.]

The opinion of the Court was delivered by

WOODWARD, J.—This is an indictment under our Act of Assembly of July 12, 1842, for obtaining money under false pretences. The Court of Quarter Sessions quashed it, on motion, "because the facts alleged, if true, do not constitute the offence charged." The facts alleged are that the defendant by himself and through one Alanson Canfield, falsely and fraudulently represented to James B. Smith, that he had a warrant issued by competent authority, for the arrest of his daughter, Esther Ann Mapes, for a public offence punishable by fine and imprisonment, and by reason of such representation obtained from said Smith goods and moneys to the value of one hundred dollars. It is fully charged that this was done with intent to cheat and defraud the said Smith. There is no complaint on record against *the manner* of charging these facts, but the objection is they do not constitute the statutory offence.

"Every person, who, with intent to cheat or defraud another, shall designedly by color of any false token or writing, *or by any false pretence whatsoever*, obtain from any person any money, personal property, or other valuable things, upon conviction thereof shall," &c. Such is the Act. There was no false token or writing in this case, but was there not a false pretence? In the Commonwealth *v.* Burdick, 2 *Barr* 163, the late Ch. J. GIBSON took notice that our Act of Assembly was more comprehensive and emphatic than the English statutes, and suggested a doubt whether a naked lie, by which credit has been gained, would not in every case be deemed within our statute. If this doubt be not well grounded, if to constitute a false pretence there must be a lie with a circumstance, I think we have it in the facts set forth in this indictment. To pretend that his daughter had committed a public offence—that a warrant had been issued for her—that the defendant had come to arrest her—and particularly to procure another individual to carry the same intelligence to the prosecutor, was a well concerted scheme to alarm his fears and to extort from him money. It was quite as false a pretence as a fraudulent misrepresentation of a party's means and resources, which has many times been decided to be a false pretence within our Act and similar statutes in our sister states and in England. See the cases collected in *Wharton's Crim. Law* 627. And it was quite as immoral as in the case of Rex *v.* Young *et al.*, 3 *Term Rep.* 98, where four men came to the prosecutor, representing that a race was about to take place—that they had bet on William Lewis's going a certain distance within a limited time, and should probably win, and induced him to advance money. Afterwards the whole story proved to be an absolute fiction. Lord Kenyon very justly observed, "it seems difficult to draw the line, and to say to what cases the statute shall

[Commonwealth *v.* Henry.]

extend; and therefore, we must see whether each particular case, as it arises, comes within it. I admit there are certain singularities which are not the subject of criminal law. But when the criminal law happens to be auxiliary to the law of morality, I do not feel any inclination to explain it away. Now this offence is within the words of the Act, for the defendants have by false pretences fraudulently contrived to obtain money from the prosecutor, and I see no reason why it should not be held to be within the meaning of the statute." And in more recent cases it has been held, under the English statutes, that if a man fraudulently represent, as an existing fact, that which is not an existing fact, and so gets money, that is a false pretence. Nor is it less a false pretence because the party imposed upon might, by common prudence, have avoided the imposition: Regina *v.* Wolley, 1 *Den. C. C. R.* 559; 4 *New Sess. Cases* 341; 19 *Law J.* R. *C.* 165.

Here was a fraudulent representation of several things as existing facts which the indictment alleges were false pretences, and which, if proved, would be so adjudged under the English statutes, and, *a fortiori*, ought so to be under ours.

In the Commonwealth *v.* Thompson, 3 *Penna. Law Journal*, and commented on in *Lewis U. S. Crim. Law* 197, a similar pretence of a warrant of arrest was held not to be within the statute, only because it was used to procure payment of an honest debt. A false representation by which a man may be cheated into performance of, a *duty* is not within the statute. The ingredients of the offence are the obtaining money by false pretences and with intent to *defraud*, and these are found in the facts alleged in this indictment, and therefore, the judgment of the Court is reversed, and a *procedendo* awarded.