# Commonwealth *v.* Evans, Appellant.

*Criminal law—Receiving stolen goods—Evidence — Accomplices —Corroborative proof.*

A conviction on an indictment for receiving as stolen goods four bales of tobacco, will be sustained where two accomplices testify in a straightforward manner, without their testimony being shaken in the slightest particular by cross-examination, that they were employed by the defendant to steal the tobacco, and to deliver it to him, and that when they delivered the tobacco the defendant sent his son to a bank to have a check cashed to pay them, and this is corroborated by proof that on the day in question a check was drawn by the defendant and charged to his account.

In such a case it is proper to admit in evidence proof that when defendant was arrested he denied having sold any tobacco up to that date, and that in this he was contradicted by a dealer who testified that he had bought five bales of tobacco on the day immediately preceding the arrest. Even if such proof were irrelevant it was harmless, if it appeared that defendant testified at length to the same facts.

Argued Nov. 11, 1918. Appeal, No. 273, Oct. T., 1918, by defendant, from judgment of Q. S. Lancaster Co., April Sessions, 1918, No. 47, on verdict of guilty in case of Commonwealth v. John Evans (real name John W. Evans). Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Indictment for receiving stolen goods.

The jury returned a verdict of guilty.

On a motion for a new trial HASSLER, J., filed the following opinion:

The ten reasons for a new trial, filed in this case, question the correctness of our instruction to the jury on the corroboration of the testimony of the accomplices, and on the effect of the testimony of good character of the defendant.

The defendant was indicted for and convicted of having received four bales of tobacco that had been stolen

from John A. Reeser, knowing the same to have been stolen. After testimony by the owner that it was stolen, Alfred Green and Chester Green testified that they stole it and delivered it to the defendant under the following circumstances: Some time prior to January 7, 1918, the defendant asked Alfred Green, in the presence of Chester Green, to get him some tobacco. Alfred said he hadn't raised any. The defendant replied that farmers raised plenty, to which Alfred answered, "All right, if you want it that way I guess I can get some." The defendant then told them to be careful, and not get themselves into trouble. On the night of January 7, 1918, they stole the four bales of tobacco from John A. Reeser. During the night they left it at the tobacco shed of defendant, in the village of Intercourse, but did not see him then as he had gone to bed. The next morning, January 8, 1918, they went to the defendant's hotel, and, after examining the tobacco, he agreed to pay them $15.00 for it. It was testified that it was worth $75.00. They both testified that he sent his son across the street to the bank to get a check cashed, and then paid them the amount agreed upon. Both accomplices testified to these facts. Chester Green testified that they had previously taken stolen chickens to the defendant, and sold them to him.

Minnie Johnson, Chester Green's housekeeper for the past three years, testified that she was along with him and Albert Green at the defendant's hotel on January 8th, and that Chester had no money when he went there, but did have some when he left.

A warrant was served on the defendant on February 22, 1918. He took the officers who served it to the tobacco shed, where the tobacco which he raised was stored, to show them that he did not have the stolen tobacco. The officers were accompanied by John A. Reeser. The two officers and John A. Reeser testified that he told them at that time that he had not sold and delivered any tobacco up to that date. Charles S. Breneman, a tobacco dealer in this city, testified that on February 21, 1918,

the defendant delivered five bales of tobacco at his warehouse in this city. The defendant in his testimony admitted this to be true. The defendant did not remember what he said to the officers and Mr. Reeser when the warrant was served, but he did not deny that he told them what they testified to.

The defendant in his first point asked us to instruct the jury that "the testimony of Alfred and Chester Green being that of accomplices, it would be dangerous to convict the defendant upon their evidence or that of either." In the first few sentences of our charge we said that the defendant made this request and we affirmed it, and then said, "It is our duty to caution you that you must scrutinize their testimony very carefully before giving much weight to it, but if you are convinced beyond a reasonable doubt from their manner of testifying and from their appearance on the stand that they are telling the truth you may convict on their testimony, even though you find it uncorroborated. This, however, as we have said, would be dangerous, but you can do it if you are satisfied that they told the truth?"

We then referred to the testimony that might be considered by the jury as corroborating that of the accomplices. It was proven that a check drawn by the defendant for $11.70 was paid at the Intercourse bank on January 8th, and charged to the defendant's account. This was corroboration of the testimony of the Greens that he sent his son over to the bank to have a check cashed, the amount of which they did not know, on January 8th when he paid them, and we properly told the jury that this was some corroboration of the accomplices. It is not necessary for testimony to corroborate the accomplices in all particulars. All that is requisite is corroboration of some material particular of their testimony, and it was a material corroboration of it to show that a check had been cashed at the bank on the day they received the money, as they testified that the defendant got the money or some of it to pay them in that way: Watson v. The Commonwealth, 95 Pa. 418.

The defendant asked us in his second point to instruct the jury that "the testimony of Steigerwalt et al., at the time this defendant was arrested was no corroboration of the testimony of the accomplices." Steigerwalt et al., in the point, refers to the three persons who served the warrant, or who were present when it was served, and who heard the defendant say he had sold and delivered no tobacco up to the 22d of February, 1918. We said to the jury, after detailing their testimony, "It is for you to say whether that corroborates the Greens." The fact that the defendant had disposed of tobacco, and did not want the officers, who were looking for some that had been stolen to know it, when they were about to arrest him for having it, to say the least, was a very suspicious circumstance. Why did he wish to conceal the fact? The answer is so evident that it was not necessary for us to have expressed our opinion to the jury that it was corroborative of the testimony of the accomplices, which we might properly have done, but it could be left with perfect safety to them which was quite favorable to the defendant, and of which he should not complain. Corroboration is for the jury: 3 Wigmore on Evidence, pages 2751 and 2752.

In Henry on Trial Evidence, Section 466, it is said, "The testimony of an accomplice in crime should be received with caution,......and the jury should be instructed to carefully scrutinize his testimony before giving it much weight. But there is no rule of law forbidding conviction on such testimony without corroboration. If the manner of the witness in testifying, and his appearance on the stand, impresses the jury with the truth of his statements beyond a reasonable doubt, they may convict on such testimony alone, and it is then for the trial judge, who will have heard the witness testify, and thus had an opportunity to judge of his credibility, to say whether he is satisfied with the verdict." This is supported by numerous cases, among which are Watson v. Com., 95 Pa. 418; Ettinger v. Com., 98 Pa. 338; Com. v. Craig, 19 Pa. Superior Ct. 81; Com. v. Lenhart, 40 Pa.

Superior Ct. 572; Com. v. Klein, 42 Pa. Superior Ct. 66; Com. v. DeMasi, 234 Pa. 570. While it is usual for the courts to advise a jury to acquit unless the testimony of accomplices is corroborated it is not error to refuse to do this if the testimony of the accomplices is clear and convincing: Com. v. Klein, 42 Pa. Superior Ct. 66.

All that the defendant was entitled to was the instruction to the jury we gave as to the necessity or advisability of the testimony of the Greens being corroborated. Whether the testimony referred to in the second point was corroborative, was a matter for the jury.

We are convinced, in addition, that a verdict of guilty even on the uncorroborated testimony of the accomplices would have been justified, so that it is not against the law even though the matters we referred to are not corroborative of it. Their testimony was straightforward, their manner on the stand convincing, and a severe cross-examination by the astute and experienced counsel for the defendant, failed to shake their testimony in the slightest particular. We would, therefore, refuse a new trial in this case, even if the testimony of the two accomplices had not been corroborated in any particular.

The second question raised in the reasons for a new trial is, were our instructions, on the effect of the testimony of the defendant's good character, correct? We said to the jury on this subject, "In addition, the defendant has produced a number of witnesses who have testified to his good character. This is substantial testimony and must be considered by you. It of itself may be sufficient to raise a reasonable doubt of his guilt, as it would be unlikely that one who had such evidence of good character as he produced would commit the offense charged here, but it does not raise a distinct issue. You must consider it in connection with all the other testimony in the case, and if with it and the other testimony you are satisfied beyond a reasonable doubt that he received these goods knowing them to have been stolen, then you should have no hesitancy in convicting him. But if after con-

sidering this you have any reasonable doubt, either with or without their testimony, any reasonable doubt of his guilt, you must acquit him." This is in strict accord with the case of the Commonwealth v. Aston, 227 Pa. 106; in fact, it is almost the same language that Justice ELKIN, who delivered the opinion of the Supreme Court in that case, used. It was an affirmation of the defendant's third point.

We did not read any of the defendant's points to the jury, but simply stated that, "We will refuse defendant's third point; we have already affirmed the first and second." We stated in our charge the request contained in the first point and affirmed it, and we covered fully the law contained in the second and third points, and what we said in our general charge was an affirmance of them. We had marked how we intended answering them, and in copying them the reporter used these marks as our answers. The third was marked refused because we were not willing to affirm it standing alone without explaining the necessity of the jury's consideration of the testimony of good character with all the other testimony in the case.

We do not think it was necessary to read the points to the jury, and to have answered them in addition to what we said in the general charge. All that a party is entitled to is to have the matter contained in his point properly covered and answered in the general charge: Fleming v. Dixon, 194 Pa. 67; Com. v. Barner, 199 Pa. 335; McHenry v. Bulifant, 207 Pa. 15; Creachen v. Bromley Bros. Carpet Co., 214 Pa. 15; Miller v. Smith Woolen Machinery Co., 220 Pa. 181. It is not necessary that the exact language of the point be used, but the judge may choose his own form of expression, if it fully and with substantial accuracy expresses the law contained in the point: Com. v. Lewis, 222 Pa. 302. We are satisfied that in our general charge we fully covered and affirmed all of defendant's points, that no error was committed in the trial of the defendant, and that a verdict of guilty was

clearly justified by the testimony. We, therefore, discharge the rule for a new trial.

*Errors assigned,* inter alia, were (1-9) admission of various portions of the testimony of Charles S. Breneman; (12) refusal of binding instructions for defendant.

*Charles W. Eaby* and *B. F. Davis,* for appellant.

*S. V. Hosterman,* District Attorney, for appellee.

OPINION BY WILLIAMS, J., December 12, 1918:

The able opinion of the court below, discharging the rule for new trial, sufficiently disposes of the more serious contentions of appellant: see also Com. v. Sayars, 21 Pa. Superior Ct. 75, and Com. v. Brown, 58 Pa. Superior Ct. 300.

The remaining question is whether the court below was guilty of reversible error in admitting the testimony of Breneman (assignments one to nine inclusive). Defendant testified at length to the same facts: even if irrelevant, it does not appear how it harmed appellant.

The judgment is affirmed, and the record remitted to the court below to the end that the sentence may be carried into effect.